IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AVERY SETZER and SANDA SETZER, | § § | |
| PLAINTIFFS, | § § | |
| V. | § § | A-11-CA-214 LY |
| CLARK RICHARDS, BRANCH BANKING AND TRUST CO., MERSCORP, INC., MACKIE WOLF ZIENTZ & MANN, P.C., and JOHN DOES 1-100, | § § § § § | |
| DEFENDANTS. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are the Motion to Dismiss Claims of Avery Setzer for Lack of Subject Matter Jurisdiction and Brief in Support of Branch Banking & Trust, Mackie, Wolf, Zientz & Mann, P.C., Merscorp, Inc. and Clark Richards, filed October 17, 2011 (Clerk's Dkt. #81); Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted of Branch Banking & Trust, Mackie, Wolf, Zientz & Mann, P.C., Merscorp, Inc. and Clark Richards, filed October 17, 2011 (Clerk's Dkt. #82); Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, filed October 25, 2011 (Clerk's Dkt. #89); Plaintiff's Reply to Defendant's Motion to Dismiss Claims of Avery Setzer for Lack of Subject Matter Jurisdiction, filed October 25, 2011 (Clerk's Dkt. #90); Reply Brief on 12(b)(6) Motion to Dismiss, filed November 4, 2011 (Clerk's Dkt. #97); and Plaintiff's Rebuttal to Defendant's Reply in Plaintiff's Opposition to Defendant's Motion to Dismiss, filed November 18, 2011 (Clerk's Dkt. #99). The motions were referred by United States District

Judge Lee Yeakel for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

Plaintiffs Avery Setzer and Sanda Setzer have filed this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), the Home Equity Protection Act, "Constitutionally protected Fundamental Rights," "common-law Rights" and the Uniform Commercial Code ("UCC"). (Plf. "2nd Am Compl." ¶ 6). Plaintiffs name as defendants Branch Banking and Trust Company ("BB&T"), MERSCORP, Inc. ("MERSCORP"), Mackie Wolf Zientz & Mann, P.C. ("Mackie Wolf") and Clark Richards ("Richards"). (*Id*. ¶¶ 2-5).

The controversy arises from a home loan transaction entered into in November 2008 (the "Loan") by Sanda Setzer, her daughter, Robin Setzer ("Robin"), and Robin's husband, Scott Hagerle. The home loan was for the purchase of property located at 9606 Newberry Drive, Austin, Texas.[1] In February 2011 Robyn Setzer and Scott Hagerle executed a quitclaim deed of their interest in the Property to Avery and Sanda Setzer. On March 17, 2011, Sanda Setzer executed a quitclaim deed of her interest in the Property to Avery Setzer. (*Id*. ¶¶ 9, 17 & 22).

---

[1]Although the purpose of the loan is not precisely clear from the face of Plaintiffs' complaint, attachments to Plaintiffs' responsive pleadings make clear the loan was executed as a mortgage to acquire the Property.

According to Plaintiffs, Alethes was the original lender and in December 2008 they were informed that the servicing rights to the Loan were assigned to BB&T. (*Id*. ¶¶ 9-10). They further allege MERSCORP is the parent company of MERS, which is a "mortgage electronic service" and was the nominee holder of the mortgage and assignee of a note and deed of trust to BB&T. (*Id*. ¶ 3). Plaintiffs allege Mackie Wolf and Richards have "worked with other defendants to prevent Plaintiffs from obtaining proper documentation of their loan and has acted to conceal records and information" but has "never proven" their "'Agency' or 'Standing' in this case." (*Id*. ¶¶ 4-5).

Plaintiffs allege they sent a Qualified Written Request ("QWR") to BB&T on October 14, 2010. They state the letter was never answered. Plaintiffs also allege "In Discovery the letter to Alethes LLC was found in BB&T's file, they had ignored it." (*Id*. ¶ 12). Plaintiffs further allege on October 23, 2010, they "sent a tort letter to Alethes, LLC, it was returned undeliverable. County Clerk records showed Alethes, LLC as still the lender." (*Id*.). They state they were informed by Danny Smith on December 29, 2010, that Alethes LLC had been out of business since May 2009. Plaintiffs allege they sent a "tort letter" to both BB&T and Alethes, LLC on that day. (*Id*. ¶ 13). Plaintiffs further state they received "an inadequate response" from BB&T to the QWR on January 10, 2011. On January 13, 2011, they sent a Validation of Debt Letter to BB&T. Plaintiffs allege they sent a revised Validation of Debt Letter to BB&T on January 18, 2011. (*Id*. ¶¶ 13-15).

Plaintiffs further allege on February 10, 2011, they received a response to the Validation of Debt Letter. The response stated BB&T acquired the Loan from Alethes, LLC on January 1, 2009, and was servicing for investor Ginnie Mae. (*Id*. ¶ 18). Plaintiffs state they requested a loan modification package from BB&T on February 15, 2011. On February 22, 2011, BB&T sent a letter to Plaintiffs advising them the Loan had been sent to an attorney to institute foreclosure proceedings.

(*Id*. ¶¶ 19-20). Plaintiffs allege that, although they received a letter from BB&T on April 4, 2011, advising them a loan modification package had been mailed, they never received the package. They sent a letter to BB&T on June 6, 2011 stating they had not received the package. (*Id*. ¶¶ 23 & 25).

Plaintiffs additionally allege they sent a Letter of Validation to Mackie Wolf on June 15, 2011. They received a letter from Mackie Wolf on July 1, 2011, with a copy of the front of the original note and deed of trust. Plaintiffs state they also received a notice of trustees sale for July 5, 2011. They further state on July 5, 2011, Mackie Wolf foreclosed on the Property for BB&T. (*Id*. ¶¶ 26-28). Plaintiffs finally allege BB&T has reported Sanda Setzer to "all 3 credit bureaus at least 11 times, without authority" despite the dispute of the Loan. (*Id*. ¶ 32).

## II. ANALYSIS

Defendants have moved to dismiss Plaintiffs' claims based on both lack of standing and failure to plead specific factual allegations entitling them to relief.

### A.   Standing

Defendants first contend any claims asserted by Avery Setzer should be dismissed as he lacks standing to assert such claims. Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This requirement, like other jurisdictional requirements, is not subject to waiver and demands strict compliance. *Raines*, 521 U.S. at 819; *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). To meet the standing requirement a plaintiff show (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007).

As Defendants point out, the complaint states the original home loan which is the basis for the claims in this case was entered into by Robin Setzer, Scott Hagerle and Sanda Setzer. (Plf. 2nd Compl. ¶ 9). They maintain that because Avery Setzer was not a party to that transaction he lacks standing to complain of any irregularities in that mortgage transaction. Plaintiffs, in turn, contend Avery Setzer has standing by way of quitclaim deeds executed by Robin Setzer, Scott Hagerle and Sanda Setzer, transferring all of their interest in the Property to Avery Setzer. (Plf. Reply to Def. Mot. To Dism. Claims of Avery Setzer, Exs. A-B). They argue this lawsuit arose from a break in the chain of title to the Property, not the note and deed of trust of the mortgage transaction.

A quitclaim deed is a deed of conveyance intending to pass any title, interest or claim of the grantor, but not professing that such title is valid. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 769 (Tex. 1994) (citing BLACK'S LAW DICTIONARY 1126 (5th ed. 1979)). "By itself, it does not establish any title in those holding the deed, but merely passes the interest of the grantor in the property." *Rogers*, 884 S.W.2d at 769. "When a mortgagor executes a deed of trust the legal and equitable estates in the property are severed. The mortgagor retains the legal title and the mortgagee holds the equitable title." *Flag-Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987).

Avery Setzer does not dispute he was not a party to the original mortgage on the Property. By way of the quitclaim deed, the mortgagees Sanda Setzer, Robyn Setzer and Scott Hagerle were

5

able to transfer only the interest they had in the Property, not full title. Plaintiffs have not alleged any transfer was made of the obligations undertaken by the mortgagees in the original mortgage transaction. Accordingly, Avery Setzer has not shown he has standing to complain of wrongdoings in that transaction, whether or not they created a cloud on the title was transferred to him by way of the quitclaim deed.[2] Defendants' motion to dismiss the claims brought by Avery Setzer should thus be granted.

**B.      Failure to State a Claim**

Defendants have also moved to dismiss all of Plaintiffs' claims for failure to state a claim upon which relief may be granted. When evaluating a motion to dismiss under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil

---

[2] *See Henry v. Guaranteed Rates, Inc.*, 415 F. App'x 985, 985-86 (11th Cir. 2011) (plaintiff, who acquired interest in property by quitclaim deed, but was not party to mortgage loan, lacked standing to complain about any alleged misconduct regarding mortgage loan); *Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 873-74 (11th Cir. 2010) (plaintiff who was not party to mortgage loan lacked standing to complain of loan servicer's alleged fraudulent overcharges, fraudulent service, fraudulent late fees or fraudulent escrow fees); *Thomas v. Guild Mortg. Co.*, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) (homeowner who is not party to mortgage loan cannot assert TILA, RESPA, Home Ownership and Equity Protection Act, or fraud claims against lender for improper disclosures; fact that property had been quit claimed to him not relevant); *Harris v. Deardoff*, 201 WL 4056013 at *4 (M.D. Pa. Oct. 14, 2010) (plaintiffs who were not party to mortgage loan lacked standing to assert RESPA claim); *Cleveland v. Deutsche Bank Nat'l Trust Co.*, 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009) (dismissing TILA, RESPA and fraud claims of plaintiff whose wife took out mortgage for lack of standing); *Brockington v. J.P. Morgan Chase Bank, N.A.*, 2009 WL 1916690, at *2 (N.D. Cal. July 1, 2009) ("equitable owner" of property lacked standing to challenge bank's conduct in connection with extending mortgage or to assert claim for unlawful concealment of facts by defendants). *See also McDaniel v. South & Assocs., P.C.*, 325 F. Supp. 2d 1210, 1214 (D. Kan. 2004) (plaintiff who did not sign any closing or loan documents for initial mortgage or refinanced mortgage lacked standing to bring illegal debt collection claim against debt collector).

Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570. The Supreme Court has recently made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 536 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. Thus, in considering a motion to dismiss the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950. (quoting FED. R. CIV. P. 8(a)(2)).

Defendants have moved to dismiss Plaintiffs' claims against them for failing to set forth factual allegations against them which state a legally cognizable cause of action. As an initial matter, the undersigned notes Plaintiff's current complaint, although entitled "Second Amended Complaint"

7

is the fourth complaint they have filed in this action. Prior motions to dismiss, and an order by the undersigned, make clear Plaintiffs' were aware of the need to comply with the strictures of Rule 8 of the Federal Rules of Civil Procedure and plead specific factual allegations making clear the conduct they believe entitles them to relief. Nonetheless, although Plaintiffs have provided some factual details, their complaint is still far from a model of clarity.

For example, in the two paragraphs of their complaint setting forth their claim for "Breach of Fiduciary Duty by Fraudulent Concealment," Plaintiffs state:

> Defendants acted in concert and collusion to defraud Plaintiffs through fraudulent nondisclosure, of material facts related to the contract of the parties, including undisclosed fees, inflated appraisals, kickbacks, securitizations, payments from multiple sources undisclosed, identity theft, and other means of defendants profiting from the use of Plaintiffs names and signatures.
>
> Defendants knew Plaintiffs did not have equal access to the information as Defendants. Plaintiffs relied on the non-disclosure of Defendants and their good faith to Plaintiffs were harmed thereby by Defendants non-disclosures of material facts to the contract. Plaintiffs were harmed by the fraudulent concealment of the true value of the property, by knowledge of defendants that the loan was a predatory loan, by knowledge of defendants that Plaintiff continues to be harmed by being subject to collection attempts by Defendant of amounts which include amounts secured by fraud.

(Plf. "2nd Am Compl." ¶¶ 34-35) (paragraph number omitted). Notably absent from this claim is any specific identification of the material facts not disclosed. Further, nowhere else in the complaint do Plaintiffs reference any fees, appraisals, kickbacks or identify theft. Nor is there any link between any specific defendant and an allegedly wrongful act. Rather, Plaintiffs' claim consists simply of broad sweepig statements of wrongdoing.

Plaintiffs' claims of common law fraud and fraudulent concealment are similarly deficient. Plaintiffs suggest generally Defendants both engaged in "fraudulent non-disclosure" and made

8

representations about "the true value of the property, the true nature of the real estate market, the true creditworthiness of Plaintiff, and the commissions, fees and other profits to be created by Defendants . . . [and] their intent to cause the sale of the promissory note on the secondary real estate market" to induce Plaintiff to enter into the Loan. (*Id.* ¶ 37). Plaintiffs further allege:

> Defendants assessed fees to Plaintiffs. Defendants failed to provide documentation to show that:
> (a) said fees were not otherwise forbidden by law (such as RODASH or what is called junk fees) to be assessed to Plaintiff, (b).said fees were for services actually rendered, (c) that the services billed for were necessary, (d) said fees were paid to a bona fide vender and not a front company for one of Plaintiffs fiduciaries, (e) the amounts charged were reasonable, (f) the disbursements were actually made.

(*Id.*). They further allege Defendants presented documents by which they claimed authority to exercise foreclosure on the deed of trust and mortgage note agreement entered into between Defendants and Plaintiffs, but that the "documents were the result of an ongoing criminal conspiracy designed and intended to deprive Plaintiffs of Plaintiffs' property." (*Id.* ¶ 42).

Wholly absent from Plaintiffs' pleading are any specifics as to the representations that were made, the fees charged, and which act(s) were committed by which of the defendants. Plus, it appears from Plaintiffs' complaint that none of the defendants had any contact or involvement with Plaintiffs until after closing of the Loan. Nor have Plaintiffs explained how the documents presented by Defendants related to foreclosure on the Loan are improper or otherwise falsified. Plaintiffs' fraud claims are thus facially deficient. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (Federal Rules require complaint alleging fraud to set forth the who, what, when, where, and how of the events at issue).

9

Plaintiffs further assert claims of conversion and unjust enrichment. They allege generally that Defendants made "demand of payment" and thus acted to illegally convert Plaintiffs' property. (Plf. "2nd Am Compl." ¶ 46). They also allege Defendants "received unjust, unreported, and illegal benefits at Plaintiffs' expense," including but not limited to commissions, yield spread premiums, spurious fees and charges, "back end" payments, incentive bonuses, resale premiums, surcharges, high rates of return, servicing fees, percentages of payment proceeds, "TARP bailouts, insurance proceeds, tax benefits [and] securitization profits. " (*Id.* ¶ 55). Notably absent is any identification of which of the laundry list of benefits were actually charged to Plaintiffs or any explanation as to why those benefits were not proper. Conclusory allegations alone are not sufficient to state a claim. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (plaintiff must plead specific facts, not conclusory allegations, to avoid dismissal); *S. Christian Leadership Conf. v. Supreme Court of La.*, 252 F .3d 781, 786 (5th Cir. 2001) ("legal conclusions masquerading as factual conclusions" insufficient to survive 12(b)(6) motion).

Plaintiffs also generally assert claims they identify as "Negligence/Negligence per Se, Violations of TILA, HOEPA, RESPA and Regulations X and Z." (Plf. "2nd Am Compl." at 9). However, this identification falls far short of the legal requirement of stating a claim under Rule 12(b)(6). Plaintiffs assert they were owed "a general duty of care" as "Defendants are all licensed professionals." (*Id.* ¶ 48). They further allege:

> In addition, Defendants owed a duty of care under TILA. HOEPA, RESPA and the Regulations X and Z promulgated there-under to refrain from committing acts defined as criminal by statute and committing violations of civil statutes to the detriment of Plaintiffs, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, to refrain from charging fees to Plaintiffs at closing that were forbidden to be charged by law, and to avoid paying undue compensation such as "yield spread premiums' to Defendants and others.

(*Id.* ¶ 48).

Although Plaintiffs identify various statutes, and assert Defendants were obligated not to violate those statutes, they fail to identify the section(s) of the statute(s) at issue, the facts supporting liability or even the specific actor they wish to hold liable under each statute.[3] Moreover, they have asserted Defendants owed them a general duty of care as licensed professionals, however, only Richards is a licensed professional. As noted below, they have failed to identify any specific act performed by Richards. Plaintiffs' conclusory allegations are insufficient to state a claim under Rule 8.

Plaintiffs also assert a claim for breach of the duty of good faith and fair dealing. Plaintiffs allege Defendants breached this duty when they:

> (a) Failed to provide all of the proper disclosures; (b) Failed to provide accurate Right to Cancel Notices; (c) Placed Plaintiff into Plaintiffs current loan product without regard for other more affordable loan products; (d) Placed Plaintiff into a loan without following proper underwriting standards; (e) Failed to disclose to Plaintiff that Plaintiff was going to default because of the loan being unaffordable; (f) Failed to perform valid and/or properly documented substitutions and assignments so that Plaintiff could ascertain Plaintiff rights and duties and to whom Plaintiff owed a contractual obligation; and (g) Failed to respond in good faith to Plaintiffs request for documentation of the servicing of Plaintiffs loan and the existence and content of relevant documents..

---

[3] In responding to the motion to dismiss, Plaintiffs assert they "stated as fact that lender charged false fees at closing" and failed to prove the fees were authorized by law and necessary in violation of RESPA. (Plf. Resp. at 2). Although Plaintiffs do not make this clear in either their complaint or response to the motion to dismiss, they are apparently urging a claim under 12 U.S.C. § 2607 which prohibits payment of kickbacks and unearned fees. Private plaintiffs have a one-year limitations period for suits alleging such a violation. 12 U.S.C. § 2614; *Snow v. First Am. Title Ins. Co.* 332 F.3d 356, 359 (5th Cir. 2003). As this action was brought more than one year after the allegedly improper fees were charged, Plaintiffs' claim based on those fees is untimely. *See Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (complaint may be subject to dismissal if allegations affirmatively demonstrate plaintiff's claims are barred by statute of limitations).

(*Id.* ¶ 60). However, Texas courts have rejected the existence of any special relationship between a mortgagor and a mortgagee which creates an independent common law duty of good faith and fair dealing. *See FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990) (relationship of mortgagor and mortgagee ordinarily does not involve duty of good faith); *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App.–Corpus Christi 2005, pet. denied) (no breach of duty of good faith and fair dealing based on allegations of failure to properly accelerate mortgage debt); *White v. Mellon Mortg. Co.*, 995 S.W.2d 795, 800 (Tex. App.–Tyler 1999, no pet.) (relationship between mortgagor and mortgagee does not give rise to duty of good faith); *Lovell v. Western Nat'l Life Ins.*, 754 S.W.2d 298, 303 (Tex. App.–Amarillo 1988, writ denied) ("[T]here exists no special relationship between the [borrowers and note-holder] and, therefore, no duty of good faith and fair dealing is implied"). Accordingly, there was no duty of good faith and fair dealing imposed between Plaintiffs and Defendants and no legally cognizable claim for a breach of said duty..

Plaintiffs also assert a claim under the FCRA. In their complaint they allege Defendants violated "numerous provisions" of the FCRA by their:

> (a) Failure to provide credit scores; (b) Failure to provide Notice to Home Loan Applicant; (c) Failure to provide Notices of Adverse Action; (d) Failure to provide Risk-Based Pricing Notice; (e) Failure to make Investigative Consumer Report Disclosure; (f) Failure to note disputed credit reports.

(Plf. "2nd Am Compl." ¶ 65). No facts are referenced in this portion of the complaint. The complaint makes only one related factual assertion – that BB&T has reported Sanda Setzer to "all 3 credit bureaus at least 11 times, without authority" without reporting the Loan is disputed. (*Id*. ¶ 32).

Defendants argue Plaintiffs do not have a private right of action under the FCRA because any role they had was as a "furnisher of information" rather than a "consumer reporting agency." A federal court lacks subject matter jurisdiction to hear a dispute alleging a violation of a federal statute where the statute does not expressly or implicitly provide a private cause of action. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 817, 106 S. Ct. 3229, 3236-37 (1986). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S. Ct. 2479, 2485 (1979) (quotation omitted).

Section 1681s-2(a)(1)(A) of the FCRA provides that "a person may not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Although the FCRA does provide remedies to a consumer for certain violations, the statute specifically states those remedies do not apply to a violation of section 1681s-2(a). 15 U.S.C. § 1681s-2(c)(1). In addition, the FCRA specifically provides a violation of section 1681s-2(a) "shall be enforced exclusively" by certain federal agencies, and federal and state officials. 15 U.S.C. § 1681s-2(d). Accordingly, the portions of Obersteller's claims raised under section 1681-s2(a) fail to state an actionable claim for relief and should be dismissed.[4]

---

[4]*See e.g. Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3rd Cir. 2011) (no private right of action exists under section 1681s–2(a)); *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009) (statute explicitly bars private suits for violations of section 1681s-2(a)); *Lang v. TCF Nat'l Bank*, 338 F. App'x, 541, 544 (7th Cir. 2009) (same); *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009) (section 1681s-2(a) provides no private cause of action); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) (same); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 149 (4th Cir. 2008) (FCRA explicitly bars private suits for violations of section 1681s-2(a)); *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 358-59 (6th Cir. 2005) (consumer cannot bring private cause of action for violation of section 1681s-2(a)); *Smith*

Plaintiffs' final claim asserts they were subjected to intentional infliction of emotional distress. Under Texas law, to recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused plaintiff emotional distress; and (4) the emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006); *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004); *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003). A defendant's conduct satisfies the second element only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kroger*, 216 S.W.3d at 796 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

Defendants maintain Plaintiffs' complaint alleges only that BB&T was assigned Plaintiffs' loan, engaged in correspondence with Plaintiffs regarding the loan, and foreclosed on the loan when they failed to make payments. They contend these allegations fall short of establishing the outrageous conduct necssary to support a claim of intentional infliction of emotional distress. Whether a defendant's conduct is "extreme and outrageous" is a question of law. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999). The mere fact that conduct is tortious or otherwise wrongful is not sufficient alone to render it "extreme and outrageous." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). Instead, to be "extreme and outrageous," conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

*v. Nat'l City Mortg.*, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010) (no private right of action under section 1681s-2(a)); *Patterson v. Long Beach Mortg. Co.*, 2009 WL 4884151, at *4 (N.D. Tex. Dec. 15, 2009) (FCRA does not create private right of action for alleged violation of section 1681s-2(a)). *See also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 36 (1st Cir. 2010) (noting Congress placed express limitations on private causes of action under section 1681s-2(a)).

regarded as atrocious, and utterly intolerable in a civilized community." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

Plaintiffs, in turn, contend "Mackie Wolf Zientz and Mann by not validating the debt or proving Agency and thereby creating a fraudulent foreclosure when they should have known better, created a great deal of intentional distress." (Plf. Resp. ¶ 14). Notably, Plaintiffs' complaint is absent of any allegations that they had complied with the obligations of the Loan by making timely payments.[5] Rather, the focus of their complaint is the failure ot Defendants to properly assign or "validate" the debt.

Under Texas law, conduct associated with asserting a legal right cannot be extreme and outrageous.[6] As Plaintiffs have simply alleged Defendants foreclosed on the Property, after providing

---

[5] Indeed, as set forth above, they claim Defendants knowingly placed them into a loan product which they could not afford and would default on.

[6] *See Zurita v. Lombana*, 322 S.W.3d 463, 474 (Tex. App.–Houston [14 th Dist.] 2010, pet. denied) (prosecution of lawsuit as matter of law not extreme and outrageous); *Klein & Assocs. Political Relations v. Port Arthur Indep. Sch. Dist.*, 92 S.W.3d 889, 898 (Tex. App.–Beaumont 2002, pet. denied) (as matter of law, lawsuit did not constitute extreme and outrageous conduct sufficient to support cause of action for intentional infliction of emotional distress even though suit had no merit). Thus, courts have rejected claims asserting intentional infliction of emotional distress where defendants simply exercised rights owed under mortgage loan documents. *See Baskett v. Pleasant*, 1996 WL 135680, at *3 (Tex. App.–Dallas Mar. 27, 1996, writ denied) (defendant did no more than insist on legal rights as noteholder and landlord by engaging in proceedings incident to default and subsequent foreclosure and conduct thus cannot as matter of law support claim for intentional infliction of emotional distress); *Wieler United Savings Ass'n of Tex.*, FSB, 887 S.W.2d 155, 159 (Tex. App.–Texarkana 1994, writ denied) (upholding summary judgment on intentional infliction of emotional distress claim where defendant's conduct consisted of notifying borrower short payments would not be accepted, demanding payment of deficiencies, and other "usual and reasonable" acts preceding foreclosure).

notice, and have not alleged they had complied with their mortgage obligations, their claim for intentional infliction of emotional distress should be dismissed.[7]

Additionally, as Defendants point out, the only mention of MERS or MERSCORP in Plaintiffs' current complaint is the listing of MERSCORP as a defendant. (Plf. "2nd Am Compl." ¶ 3). Similarly, Plaintiffs' only reference to Richards is his identification as a defendant, including the statement that "he has worked with other defendants to prevent Plaintiffs from obtaining proper documentation of their loan, and has acted to conceal records and information and continues to obstruct justice.' (*Id*. ¶ 5). Plaintiffs fail to identify a single specific act performed by either MERSCORP or RIchards. They have thus failed to state any actionable claim against these defendants

Further, it is apparent any actions taken by Mackie Wolf or Richards were undertaken on behalf of a legal client. Under Texas law, attorneys are generally not liable to a third party for actions taken in connection with representing a client. *See FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 671 (S.D. Tex. 2010) (so long as attorney is engaged in conduct as part of discharge of duties in representing client, conduct not independently actionable); *Alpert*

---

[7]*See Whittle v. Miles Homes, Inc.*, 993 WL 209969, at *3 (5th Cir. June.4, 1993) ("[t]he sending of [a foreclosure notice] is, as a matter of law, not sufficient in itself to create liability for intentional infliction of emotional distress" under Texas law); *Mechali v. CTX Mortg. Co.*, 2011 WL 5006511, at *5 (E.D.Tex. Sept. 28, 2011), *adopted in* 2011 WL 5006509 (E.D. Tex. Oct 20, 2011) (allegations that defendants sent multiple foreclosure dates over nine or more months even though plaintiffs had paid and were continuing to pay loan payments not sufficient to support claim for intentional infliction of emotional distress, defendants did nothing other than follow terms of Deed of Trust where taxes on property unpaid); *Robinson v. BAC Home Loan Servicing, LP*, 2011 WL 2490601, at *5 (S.D. Tex. June 21, 2011) (assertions that defendants provided fraudulent notices and statements, took improper legal action without just cause, threatened to sell plaintiff's home, and violated federal and state law, insufficient to support claim for intentional infliction of emotionas distress where only facts alleged were lender sent letter notifying plaintiff of pending foreclosure and subsequent foreclosure of home).

*v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (attorneys not generally liable to non-client third party for statements made or actions taken in course of representing client); *Toles v. Toles*, 113 S.W.3d 899, 910 (Tex. App.–Dallas 2003, no pet.) (attorneys generally not liable to opposing party for conduct in representing client); *Renfroe v. Jones & Assoc.*, 947 S.W.2d 285, 288 (Tex. App.–Fort Worth 1997, writ denied) (under Texas law, attorneys cannot be held liable to non-client for wrongful litigation conduct). Thus, Plaintiffs have not shown they are entitled to relief on their common law claims against Mackie Wolf or Richards. Accordingly, Defendants' motion to dismiss for failure to state a claim for relief should be granted.

### III. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss Claims of Avery Setzer for Lack of Subject Matter Jurisdiction and Brief in Support of Branch Banking & Trust, Mackie, Wolf, Zientz & Mann, P.C., Merscorp, Inc. and Clark Richards (Clerk's Dkt. #81) and Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted of Branch Banking & Trust, Mackie, Wolf, Zientz & Mann, P.C., Merscorp, Inc. and Clark Richards (Clerk's Dkt. #82).

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 5th day of January, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE